# SELECT

# CASES IN EQUITY,

### DECIDED BY THE

# COURT OF COMMON PLEAS

## IN PHILADELPHIA.

---

### LANNING v. SMITH.

A mortgagor who files his bill against a mortgagee, is not entitled to a decree for redemption of the mortgaged premises under a prayer for general relief.

It is indispensable in a redemption bill, that the mortgagor offer to pay all the debt, interest, and costs, and if he does not, he lays no foundation for a decree to redeem.

*Jan.* 2. THIS was a bill in equity brought by Samuel Lanning, against Juliann Smith, widow, and others, heirs-at-law of John George Smith, deceased. It set forth that on the 12th day of September, 1833, the complainant was seised in fee of a house and lot in Philadelphia (describing it), and being so seised, he mortgaged to John George Smith to secure the payment of $2500 thereon as expressed in the mortgage, a copy of which was attached to the bill, and that the transaction was a mortgage, and nothing else. It was further stated in the bill that on the 26th day of September, 1839, the complainant was in arrear for interest on said mortgage, by reason of his poverty; but being willing to put the said J. G. Smith into possession of the premises, so that he might collect the rents, made to him a conveyance of the premises, which was duly recorded and a copy annexed to the bill: that, at the time of the execution of the deed of conveyance, there was no money paid but the mortgage-debt of $2500, and the interest amounting to the sum of $375, was the sole consideration.

It was also averred in the bill, that on the same day the said Smith executed to Lanning a deed of covenant, in which, after reciting the mortgage, describing it as intending to secure to him the payment of the said sum of $2500, with interest, and the said Lanning being unable to pay him the interest annually upon said

mortgage, he had conveyed the premises which were mortgaged to said Smith, absolutely in fee-simple; and that said Smith, being willing and anxious to befriend and accommodate said Lanning, agreed and covenanted, for himself, his executors, &c., and heirs, that if the said Lanning should at any time, within twelve months from the date thereof, pay or cause to be paid to said Smith, his heirs, executors, &c., the whole of the aforesaid debt of $2500, together with all the interest then due, and which should accrue thereon to the time of payment, and the expenses incurred in the conveyance, then the said Smith, his heirs, &c., should and would immediately, thereupon, at the proper cost of the said Lanning, make and execute such proper and sufficient deed or deeds, conveyances, or assurances in the law, for the reconveying of the said premises, as his counsel should reasonably advise or require; which said covenant was one of the exhibits attached to the bill.

It was then averred that J. G. Smith was dead, and that the defendants were his widow and heirs.

The bill then set forth that on the 26th day September, 1840, the said Lanning was ready to pay the said mortgage-debt, with the interest due thereon, and the expenses according to the said deed of covenant, and went to the known and accustomed place of business of the deceased, and there saw William H. Smith, the eldest son of the deceased, told him his business, and that he was then prepared to pay off the said mortgage, and whatever else he was bound to pay, provided he could be reinstated in said estate; when said William declared he had no power in the matter, and could not do anything. The bill averred that further proposals were made as to the business, but said William would not do anything, and told the complainant that he must see his counsel, and that he should call again in the afternoon. The bill averred that he did call, when he was told it was too late, and that he could and would do nothing; that there were so many heirs in various parts of the country it was impossible to do anything. The bill charged that the complainant was entirely defeated in his efforts to pay off said mortgage-debt on the 26th day of September, 1840. The bill prayed for general relief at the hands of the Court.

The answer admitted that complainant was seised of the premises in 1833, and mortgaged them to J. G. Smith; and that on the 26th day of September, 1839, he conveyed the same to said Smith, and that there was no other consideration paid therefor than the mortgage-debt and interest due thereon; and that said J. G. Smith

executed the covenant for a reconveyance mentioned in the bill, and that said Smith was dead. The defendants in their answer stated they did not know that, on the 26th day of September, 1840, the said complainant was ready to pay said mortgage-debt and interest due thereon, and the expenses according to said deed of covenant; but that Lanning did not make to them, the defendants, or any of them, a tender of money, or exhibit any, nor did they see any in his hands or possession that day; that true it was he came to the place of business mentioned in the bill, and said William H. Smith recollected that Lanning said he was prepared to pay as soon as the papers were ready, but that he did not make to them, or either of them, a tender of any money, or show them any, nor did they at that time see any money in his possession; and the said William H. Smith did say that he and his brother were only two parties, and could do nothing, and desired said complainant to call again, or in the afternoon, and they would see their attorney, which they did, and when he called again they told him their lawyer said it was too late, and added that they could do nothing; also that there were numerous heirs in the western country and many other places, or words to that effect. The defendants stated in their answer that the said J. G. Smith, in his lifetime, did not consider the premises worth more than $3000; there was also a statement of the rents received and expenses incurred annexed to the answers.

The case was set down for hearing, and argument on bill and answer alone.

The cause was argued by Mr. *Wheeler*, for the plaintiff, who contended that his client had the right to redeem, and cited 7 John. C. R. 40; Coke Litt. 205; 4 Kent Com. 88, 143.

Mr. *Kennedy*, for defendant, contended it was not a mortgage: cited 15 S. & R. 135; 2 Kent, 129; 2 John. C. R. 34; 15 Ves. 418.

The opinion of the court was delivered by

KING, President.—Whether we agree with the complainant and consider the mortgage of 1833 as a subsisting instrument in full force, or whether we consider the deed and defeasance of the 26th of September, 1839, as a substituted mortgage, and not a conditional conveyance, still the only relief the complainant is entitled to, is the right of redemption: M'Donough *v.* Strawbridge, 2 Ball & Beatty, 555; Drew *v.* O'Hara, Ib. 562. This he does not ask in his prayer for special relief; nor has he asked for it on the hearing under the comprehensive operation of the prayer for general relief: Cook *v.*

Martin, 2 Atk. 3.   It is doubtful, however, even if the complainant at the hearing had under the prayer for general relief asked to redeem, we could have made such a decree under this bill.   Although, in the case of Cholmley *v.* Countess of Oxford, 2 Atk. 267, Lord Hardwicke seemed to consider that whenever a mortgagee is made a party to a bill by the mortgagor, praying relief, it is the same thing as praying to redeem, *because redemption in such a bill is the proper relief;* yet in all the precedents of bills to redeem the plaintiff is made to offer to pay debt, interest, and costs, and in the case of Beekman *v.* Frost, 18 John. Ch. Rep. 554, it is expressly ruled that such an offer is essential and indispensable in a redemption bill.   The plaintiff cannot be *compelled to redeem* on the terms of payment : it is at his election to do so or not.   If he makes no offer to pay, he does not lay the foundation for a decree to redeem. Indeed, the complainant here puts his case on other grounds, which are clearly not tenable.   He asks the court to decree " that the mortgage is still in being," and " that the defendants be ordered to convey the mortgaged premises to him, subject to the mortgage-debt, or to so much of it as is due."   Now such a decree is against everything like equity principles and practice.   Where, as here, there is no dispute as to the legal and *bonâ fide* character of the mortgage (considering it at present to be a mortgage), the plaintiff cannot ask the intervention of a Court of Equity to aid him in obtaining the legal title to his land until he offers to do equity by paying the defendant the mortgagee his debt, interest, and costs : Smith *v.* Valence, 1 Rep. in Ch. 170 ; Cowp. 601 ; 2 Vern. 536 ; 9 Ves. 71 ; 5 Price, 319 ; 15 John. 515.   It is however admitted, that, in reference to costs, a mortgagee may subject himself to their payment where he resists redemption merely for the sake of opposing the mortgagor, where a clear equity to redeem can be proved against him : Baker *v.* Wood, 1 Ves. 461 ; Broughton *v.* Davis, 1 Price, 224.   In a case like the present, where the alleged mortgagee has been in the possession of the mortgaged premises and in the receipt of its profits, although the mortgagor is entitled to an account, yet where, from his own showing, these profits can amount to but little more than interest on the mortgage-debt, he must offer to pay the mortgagee the difference between the profits of the land and the principal and interest of the mortgage-debt before he can claim relief.   Here is a case in which the complainant admits himself to be a debtor to the defendant to a large amount ; concedes, that, to secure the payment of this sum, he executed to

him an absolute deed of his real estate, accompanied, however, with an instrument which he, the plaintiff, considers a defeasance operating to change his absolute conveyance into a mere mortgage; the money secured by which he does not pretend he has paid or satisfied. In the face of these admissions, and without exhibiting a single fact to justify so novel a procedure, he asks us to compel the defendants to reconvey to him the legal title to the land, which he conveyed to Smith for the security of his money, and this without doing or offering to do what equity, natural as well as artificial, manifestly requires; viz. offering payment of what he justly owes as a condition precedent to any interference with the existing legal rights of the defendants. The proposition is one so manifestly unsound, that its simple statement carries with it its own refutation.

I have said that not a single fact is stated to justify the extraordinary interference required of us. It is to be borne in mind that the plaintiff has set down this case for argument on bill and answer, without going into any proofs of his case. Under such circumstances, the plaintiff admits the answer to be true in all points, and no other evidence is admitted unless it be matters of record, to which the answer refers. All the averments in the answer are to be taken as true; and even where the defendant states he *hopes* to be able to prove such and such matters, they must be considered as proved, *as the plaintiff, by not replying, has excluded the defendant from the opportunity of proving his averments:* Brekenhoff *v.* Brown, 7 John. C. R. 217. The effect of a plaintiff setting down a cause for hearing on bill and answer would seem to be analogous to a common-law demurrer to evidence; where the party tendering the demurrer not only concedes the correctness of the testimony as given, but admits every reasonable conclusion a jury might fairly draw from such testimony. The plaintiff's bill is dismissed with costs. But as this is a case on which we only determine that the plaintiff has no title to the relief sought by his bill, the dismissal will be without prejudice, the effect of which is that this decree will not be a bar to another bill seeking appropriate relief: 1 Atk. 571; 1 Cha. Ca. 155; Cooper Plead. 270. In that event, the question will properly arise whether the deed and agreement of the 26th of September, 1839, are to be regarded as a mortgage, or an absolute purchase, subject to a re-purchase by the vendor within a limited period, which is the true question between the parties. This will involve the inquiry as to who are the proper parties in a redemption bill in Pennsylvania; whether the reconveyance is to be executed

by the heir at common law of the mortgagee, or all the heirs under the intestate laws; and how a reconveyance can be made, where, as here, there are infant trustees and heirs, and no statutory provision for such a conveyance.